In the Matter of the Claim of MARK HOTEL CORP., OPERATING HOTEL RIVERSIDE PLAZA, Respondent. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

Third Department, December 31, 1959.

*Louis J. Lefkowitz, Attorney-General (Samuel Stern, Paxton Blair, Milton Kaplan* and *Harold F. Lee* of counsel), for appellant.

*Schoenwald, Silagi & Seisler (Leonard Seisler* of counsel), for respondent.

Coon, J.  Section 581 of the Labor Law (added by L. 1951, ch. 645) established an experience-rating system which provides for variations in the unemployment insurance contribution rates of qualified employers from the standard rate of 2.7%.  This appeal is not concerned with the intricacies of the detailed method of arriving at a given employer's rate.  Suffice it to say that the purpose of the system is to encourage co-operation of employers with the administration of the unemployment insurance law and, in general, gives an employer a rate benefit for a favorable employment experience and a favorable experience in unemployment benefits paid.

Subdivision 4 of section 581 of the Labor Law established a method by which a " transferee " of the whole or a part of a trade or business, under certain circumstances, might have the advantage of the continuance of a lower rate of contributions merited by his " transferor's " favorable experience.

The Unemployment Insurance Appeal Board has affirmed a Referee's determination that respondent, Mark Hotel Corp., was entitled to the benefit of the favorable experience rating of Riverside Plaza Hotel, Inc., as its " transferee ".  The only question presented here is whether the Referee and the board had the legal power to treat respondent as a " transferee " of Riverside Plaza Hotel, Inc., within the meaning of subdivision 4 of section 581 of the Labor Law.

The facts are not in dispute.  A real estate corporation, 253 West 73rd Street Corporation, owned a building which housed a hotel and restaurant with catering services.  An operating corporation, Hotel Riverside Plaza, Inc., conducted the business of the hotel.  One Drier was the principal and controlling stockholder of both corporations.  Pursuant to a common plan to

separate the operation of rooms in the hotel from the restaurant and catering business, and to effectuate a transfer of the room operation to respondent, the following steps were taken simultaneously: (1) The real estate corporation terminated its lease with Hotel Riverside Plaza, Inc., and leased the premises to Aishel Holding Corporation; (2) Aishel Holding Corporation leased the rooms to respondent, Mark Hotel Corp., and the catering facilities to Riverside Caterers, Inc. This was all done pursuant to a common scheme and plan provided for in a written contract made on June 7, 1955. Thus respondent, Mark Hotel Corp., became the owner of the business of operating the rooms in the hotel which up to that moment had been conducted by Hotel Riverside Plaza, Inc., although there was no direct transfer from Riverside to Mark Hotel. Aishel Holding Corporation never operated any part of the business for even a moment. Respondent continued the business of operating the rooms theretofore operated by Riverside without even a momentary suspension of operation and with all of the same employees continued in employment.

The Referee has seen fit to look into the substance of the transaction rather than the form, and despite the fact that there was no technical privity between Hotel Riverside Plaza, Inc., and Mark Hotel Corp., has held that Aishel Holding Corporation was a mere conduit for effectuating the ultimate transfer which resulted. We are not concerned with the reasons for this method of completing the transfer, but it is clear that the net result was that Hotel Riverside Plaza, Inc., ceased the hotel operation and simultaneously therewith respondent became the owner of a part of that business and continued its operation without interruption. We think it was within the province of the Referee and the board to give the words " transfer ", " transferor " and " transferee " a liberal construction to carry out the intent and the purposes of the law with respect to experience rating.

Nowhere in the statute is a transfer through an intermediary expressly prohibited or excepted. The only limitations appear in paragraph (c) of subdivision 4 of section 581, which reads:

" (c) No transfer shall be deemed to have occurred if the commissioner on his own motion or an application of any interested party finds that all of the following conditions exist:

" (1) the transferee has not assumed any of the transferring employer's obligations, and

" (2) the transferee has not acquired any of the transferring employer's good will, and

" (3) the transferee has not continued or resumed the business of the transferring employer either in the same establishment or elsewhere, and

" (4) the transferee has not employed substantially the same employees as those the transferring employer had employed in connection with the organization, trade, business, or part thereof transferred."

While this subdivision defines "transfer" in a negative manner, the logical corollary is that unless all of the conditions existed a transfer shall be deemed to have occurred. In this case certainly the conditions set forth in (3) and (4) do not exist, and it could be found that the conditions in (1) and (2) do not exist.

The appellant Commissioner is not concerned with the transfer of the physical assets of the business, but only in the employment aspect of the business. In that respect there was such a continuity of employment here which would seem in fairness to entitle respondent to the benefits of the employment experience of its predecessor in the operation of the business.

The decision should be affirmed, with costs to respondent.

FOSTER, P. J., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Decision affirmed, with costs to the respondent.