627 P.2d 235

**WAREHOUSE INDEMNITY CORPORA-TION, dba Superstition Mountain Inn, Plaintiff-Appellant,**

v.

**The ARIZONA DEPARTMENT OF ECO-NOMIC SECURITY, an agency, Defendant-Appellee.**

No. 1 CA–UB 062.

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 24, 1981.

Rehearing Denied March 26, 1981.

Review Denied April 21, 1981.

Burch & Cracchiolo, P.A. by Stephen E. Silver, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

OGG, Judge.

This is an appeal from a decision of the Arizona Department of Economic Security Unemployment Insurance Appeals Board. The board held that the employment experience account of Superstition Management, Inc., (hereinafter Superstition Manage-

ment) would be transferred to Warehouse Indemnity Corporation (hereinafter Warehouse), and that Warehouse was liable for any contributions, interest and penalties due or accrued and unpaid by Superstition Management. On appeal, this court affirms the appeal board's decision.

The facts of this case, as found by the appeals board, are not in dispute. Superstition Management operated a hotel known as Superstition Inn, located in Apache Junction, Arizona. Superstition leased the land from James Knaak, owner of the land and the improvements. Knaak was also the president of Superstition Management. Superstition Management leased the land until July 25, 1978, when the lease was cancelled, and the land and improvements were sold to Elliott Glasser.

On August 1, 1978, Elliott Glasser, by a written lease, leased the Inn to Warehouse Indemnity Corporation for five years. The name of the hotel was then changed to Superstition Mountain Inn. Warehouse was originally incorporated May 4, 1977, but remained inactive until it entered into the lease with Elliott Glasser. Elliott Glasser is president and treasurer, and owns 100% of the corporate stock of Warehouse.

In January of 1979, the Arizona Department of Economic Security issued a Notice of Liability Determination to Warehouse finding that Warehouse had "acquired the business" of Superstition Management. On appeal from this decision, the unemployment insurance appeals board found the following:

[A] conclusion is warranted that the successorship of Warehouse ..., to the trade or business of substantially all the assets of Superstition Management ... has been demonstrated by the lack of intervening operators, by the furnishings of hotel or inn accommodations in the same place or business, with no stop in business, with a trade name appearing to be very similar to the general public, and with the use of the personalty used by the former operator.

On appeal, this court views the evidence in a light most favorable to up-

holding the decision of the appeals board and will affirm that decision if it is supported by any reasonable interpretation of the record. *Kane v. Arizona Department of Economic Security*, 127 Ariz. 143, 618 P.2d 637 (1980). The agency's legal conclusions, however, are not binding on this court, and we are free to make an independent determination on such questions. *See Phelps Dodge Corporation v. Arizona Department of Economic Security*, 125 Ariz. 342, 609 P.2d 612 (App.1980).

The consequences of the decision below are better understood after a brief examination of Arizona's Employment Security Act, A.R.S. § 23–101 through A.R.S. § 23–1395 (hereinafter the Act). The purpose of the Act is to lessen the burdens of involuntary unemployment and to encourage employers to provide more stable employment. A.R.S. § 23–601. The principal source of unemployment benefits is contributions from an employer. The standard rate of an employer's contribution is 2.7% of the yearly wages paid by the employer. A.R.S. § 23–728. The system is based, however, on the proposition that employers whose workers suffer the most involuntary unemployment should pay compensation at a higher rate than those employers whose workers suffer little involuntary unemployment. Therefore, adjustments in the standard rate paid by an employer may be made that either increase or decrease the rate of contribution, depending upon the Commission's payment of benefits to ex-employees of that employer. A.R.S. §§ 23–730, 23–731. *See Employment Security Com'n v. Valley Nat. Bank of Ariz.*, 20 Ariz.App. 460, 513 P.2d 1343 (1973).

The system was also designed so that the transfer of an operating business does not cut off the amount of employer contribution that will cover the risk of involuntary employment in that particular business. A.R.S. § 26–613(A)(3) defines an employer as "[a]ny individual or employing unit which acquired the organization, trade or business or substantially all the assets thereof, of another which at the time of acquisition was an employer subject to this

chapter...." A.R.S. § 23–733(A) and (D) in pertinent part provide:

A. When any employing unit in any manner succeeds to or acquires the organization, trade or business, or substantially all of the assets thereof, ... and continues such organization, trade or business, the account of the predecessor employer shall be transferred as of the date of acquisition to the successor employer for the purpose of rate determination.

\*   \*   \*   \*   \*   \*

D. Any individual or organization ... which in any manner acquires the organization, trade or business, or substantially all of the assets thereof, shall be liable, in an amount not to exceed the reasonable value, as determined by the department, of the organization, trade, business or assets acquired, for any contributions, interest and penalties due or accrued and unpaid by such predecessor employer; ...

Resolution of the present case requires this court for the first time to interpret the meaning of the language "which in any manner acquires the organization, trade or business or substantially all of the assets thereof ... and continues such organization, trade, or business." First, we must determine whether Warehouse "acquired" the business of Superstition Management. Then we will consider whether Warehouse "continued" the business. These issues must be resolved keeping the purpose of the Act in mind.

Appellant argues that Warehouse did not acquire the business or substantially all of the assets of Superstition Management because the real estate and hotel buildings were acquired personally by Glasser; his lease with Warehouse was separate from the lease held by the prior operator, Superstition Management.

It is this court's opinion, however, that Arizona's statute does not focus on the direct transfer of title for successorship. Rather, the statute focuses on the transfer of the business or assets. The statute does not say "acquire from." Instead, the language "which in any manner acquires" was used. Therefore this court will consider the substance of the transaction and not the form. Courts in other jurisdictions generally concur with this interpretation and hold that the word acquire as used in successor statutes does not require privity of contract. *See State v. Gibson's Barbecue*, 369 So.2d 1229 (Ala.Civ.App.1978); *Mark Hotel Corp. v. Catherwood*, 9 A.D.2d 412, 194 N.Y. S.2d 580 (1959); *Mason v. City Cartage Co.*, 124 Ind.App. 314, 117 N.E.2d 387 (1954). Courts in other jurisdictions have also held that the word acquire includes the holding of a lesser estate than fee simple, such as a leasehold interest. *See Chief Freight Lines Co. v. Industrial Commission*, 366 S.W.2d 48 (Mo.App.1963); *Mark Hotel Corp. v. Catherwood, supra; Sea Crest Hotel v. Dir. of Div. of Employment Security*, 330 Mass. 226, 112 N.E.2d 813 (1953); and *State v. Whitehurst*, 231 N.C. 497, 57 S.E.2d 770 (1950).

In the present case, the record indicates that Knaak was the owner and seller of the real estate and hotel known as Superstition Inn. Knaak was also the principal owner of Superstition Management, the operator of the Inn. Glasser purchased the real estate and hotel from Knaak. Glasser is the principal officer and sole shareholder of Warehouse Indemnity, the present operator of the Inn. The real estate transaction between Knaak and Glasser as individuals was consummated on or about July 25, 1978. As part of the real estate transaction on July 25, 1978, Knaak and Glasser, in their capacities as officers of their respective corporations and as contracting parties, effectuated a termination of the operation of Superstition Inn and a commencement of operations of Superstition Mountain Inn.

The acquisition of the business of the Inn may be said to be procedurally indirect. Nevertheless, it is the opinion of this court that for the purpose of A.R.S. § 23–733(A) and (D), the succession of the business and its operation were in fact direct and simultaneous. To hold otherwise would permit avoidance of the purpose of the statute.

Next, appellant argues that it did not continue the business of Superstition Man-

agement. In support of this argument, the appellant points to evidence at the hearing which indicated that upon acquiring the property, Mr. Glasser immediately closed the stables, tennis courts and guest dining room. Three or four months after the purchase of the property, Warehouse spent $40,000 to $50,000 on renovations to the Inn to attract a transient trade and do away with the concept of operating a resort.

Although changes in the physical and operational structure of a business are relevant in determining if a successor employer is continuing a business, the key factor is whether there has been a significant change in the risk of involuntary unemployment in the business. This court is unconvinced that alterations made to a hotel two or three months after its acquisition to attract a transient trade rather than a resort trade so change the nature of the business as to change the risk of involuntary unemployment in that business. Although state laws that establish standards for determining transfer of an experience rating vary from state to state, it is clear that one of the more important considerations involving successorship is continuity of employment—is the acquiring employer performing essentially the same operation with substantially the same work force as did the seller of the enterprise? *See generally Action Corporation v. Labor & Inds. Relations Com'n*, 602 S.W.2d 53 (Mo.App. 1980); *Escambia Mid-City Development Corp. v. State*, 356 So.2d 855 (Fla.App.1978); *State v. Gibson's Barbecue, supra; Robert Snyder and Associates, Inc. v. Cullerton*, 75 Ill.App.2d 1, 221 N.Ed.2d 148 (1966); and *Mark Hotel Corp. v. Catherwood, supra.*

In the present case, there is ample evidence to support the appeal board's decision that Warehouse continued the business of Superstition Management. There was no break in the continuity of employment or operation of the hotel. The evidence indicated that the total taxable payroll of Superstition Management for the month of July 1978 was $12,541.39. The total taxable payroll of Warehouse for August and September was $21,397.85. Superstition had 35

employees in July 1978 and Warehouse had 20 employees during August and 35 employees in September 1978. Twelve of the workers appearing in the wage report of Warehouse for August and September 1978 also appeared in the wage report in the month of July for Superstition. At the time of the changeover on July 25, 1978, there were at least 17 rooms with air conditioning which were available for immediate rental. At least some of them were used to house guests at all times. Most of the commercial tenants remained on the premises after the transfer under new leases. The furniture, furnishings, equipment, apparatus and other personalty within the hotel, subject to the existing chattel mortgage, were transferred to Warehouse. There was no interruption in utility services of water, electricity and gas. The existing sign on the premises remained unchanged and continued to be used. The trade name of the Inn was only slightly changed from the Superstition Inn to the Superstition Mountain Inn. Finally, the five year lease between Glasser and Warehouse restricted the use of the premises to that of a hotel. It is apparent from the monthly rental of $20,000 that Warehouse considered it was acquiring a valuable business as well as valuable physical assets, all of which it continued to possess and use in the hotel business immediately after acquisition.

Appellant argues that A.R.S. § 23–733 is a taxing act and should be construed strictly against the taxing authority. The Arizona Supreme Court has noted, however, that the Arizona Employment Security Act is remedial legislation. All sections, including the taxing section, should be given a liberal interpretation so as to effectuate the legislative purpose. *Beaman v. Westward Ho Hotel Company*, 89 Ariz. 1, 357 P.2d 327 (1960). Also, appellant urges that Arizona's act should be interpreted to complement the Federal Unemployment Tax Act, which determines a successor employer's contribution rate based on his own employment experience. *See* 26 U.S.C. § 3301. Although closely complementary, the federal and state unemployment tax laws are sepa-

rate and may be administered and interpreted by the respective officials within the limits of their granted powers. *See Beaman v. Westward Ho Hotel Company, supra.*

For the reasons stated above, the decision of the appeals board is affirmed.

O'CONNOR, P. J., and EUBANK, J., concur.