658 P.2d 820

**ENERGY CONTROL SERVICES, INC., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency, Appellee.**

**No. 1 CA–UB 280.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 16, 1982.

Rehearing Denied Dec. 22, 1982.

Review Denied Jan. 18, 1983.

Fogel & Lamber, P.A. by Dennis M. Lamer, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Sec.

## OPINION

BROOKS, Judge.

Two questions are raised in this appeal from a decision of the Unemployment Insurance Appeals Board of the Arizona Department of Economic Security:

1) Whether the Arizona Department of Economic Security exceeded its rulemaking authority in excluding, by regulation, "fixtures" from the definition of "consumer goods" as that term is used in A.R.S. § 23–617.22 (Supp.1981).

2) Whether the evidence in this case supports the determination by the Unemployment Insurance Appeals Board of the Arizona Department of Economic Security that the solar water heating systems marketed by appellant Energy Control Services, Inc. are "fixtures."

Appellant employer, Energy Control Services, Inc., sought review before the Unemployment Insurance Appeals Board following an administrative determination that "[s]ervices provided by commissioned salespersons are determined to be employment and commissions paid them are determined to be wages and reportable to this agency for [unemployment insurance] tax purposes."

After an evidentiary hearing conducted by a hearing officer for the Appeals Board, the Board rendered its decision on September 3, 1981. In it, the Board held that the "salespersons" were "employees" as defined by A.R.S. § 23–613.01 and implemented by Departmental Regulation A.C.R.R. R6–3–1723 (indicia of control). *See M.Z. Moore v. Ariz. Dept. of Economic Security*, 132 Ariz. 315, 645 P.2d 1274 (1982).

The Board found, additionally, that the exemption found in A.R.S. § 23–617.22 pertaining to door-to-door sales of "consumer goods" was not applicable because the "product packages" marketed by appellant's salespersons comprised "fixtures" which are excluded from the statutory term "consumer goods" by Departmental Regulation A.C.R.R. R6–3–1720.

Appellant's memorandum supporting its request for review of the Board's decision did not challenge the finding that the salespersons in question were "employees" pursuant to A.R.S. § 23–613.01 and A.C.R.R. R6–3–1723. Similarly, on appeal, the employer has not challenged the Board's determination that these salespersons are not independent contractors. Rather, appellant rests its appeal in this Court upon the interpretation and application of A.R.S. § 23–617.22 pertaining to an exemption for certain sales of "consumer goods."

We first consider appellant's argument concerning the correct interpretation of A.R.S. § 23–617.22 and the propriety of the Departmental Regulation implementing the statute, A.C.R.R. R6–3–1720.

The statute, in pertinent part, provides as follows:

§ 23–617. Exempt employment

"Exempt employment" means employment not considered in determining whether an employing unit constitutes an "employer" under this chapter and includes:

\*   \*   \*   \*   \*   \*

22. Service performed by individuals solely to the extent that the compensation includes commissions, overrides or profits realized on sales primarily resulting from the in-person solicitation of orders for or making sales of consumer goods in the home, except that any such service performed by an individual for an employing unit to which the provisions of § 23–750 apply is not exempt employment.

The challenged portion of R6–3–1720 states:

R6–3–1720. Exempting certain direct sellers and income tax preparers

A. A.R.S. § 23–617.22 exempts from employment individuals who solicit orders for or make sales of consumer goods, if the solicitation or sale results primarily from an in-person visit in the home of the prospective consumer. The individual must also be compensated solely by commissions, overrides, or profits if the service is to be exempted. These individuals are hereinafter referred to as direct sellers. For purposes of this exemption:

1. "Consumer goods" means personal property which is normally used for personal, family or household purposes. Consumer goods do not include such things as:

* * * * * *

d. Fixtures....

The term "consumer goods" is not defined in the Employment Security Act (A.R.S. § 23–601 *et seq.*). Appellant urges this Court to apply the definition of "consumer goods" found in Arizona's Uniform Commercial Code (A.R.S. §§ 44–2201 *et seq.*) which includes "fixtures".[1] The Department (appellee) argues that such definition should not be deemed to be conclusive since the Uniform Commercial Code and the Employment Security Act have different purposes and policies. Further, the Department defends its challenged regulation as falling within its rulemaking power granted in A.R.S. § 41–1954(A)(3) (Supp.1981).

■ It is a well established rule of statutory construction that statutes are to be construed together and that legislative construction of the meaning of certain words in one act is entitled to consideration in construing the same words appearing in another act. *Washington National Insurance Company v. Employment Security Commission*, 61 Ariz. 112, 144 P.2d 688 (1944). This principle was applied in the foregoing case holding that the term "insurance agent" as used in the Employment Security Act had the same meaning as the term was defined in the Insurance Code. This principle of statutory construction is not conclusive, however, as to legislative intent.

In *Anthony Investment Co. v. Arizona Department of Economic Security*, 132 Ariz. 176, 644 P.2d 912 (1982), this Court considered whether an individual was an "ex-empt employee" under A.R.S. § 23–617.19 which provides an exemption for "securities salesmen" who earn their remuneration by commission. Declining to apply definitions pertinent to "securities salesmen" found in Arizona's Securities Act (A.R.S. §§ 44–1801 *et seq.*), we held that such definitions were not conclusive in interpreting the term "securities salesmen" in the Employment Security Act because of the differing purposes in the legislation. The Court observed that the unemployment compensation laws have as their purpose the alleviation of the effects of unemployment.

Similarly, in *Warehouse Indemnity Corporation v. Arizona Department of Economic Security*, 128 Ariz. 504, 505, 627 P.2d 235, 236 (App.1981), this Court stated that "[t]he purpose of the [Employment Security] Act is to lessen the burdens of involuntary unemployment and to encourage employers to provide more stable employment. A.R.S. § 23–601." The Court also noted that: "the Arizona Employment Security Act is remedial legislation. All sections, including the taxing section, should be given a liberal interpretation so as to effectuate the legislative purpose." 128 Ariz. at 507, 627 P.2d at 238. *See also Beaman v. Westward Ho Hotel Company*, 89 Ariz. 1, 357 P.2d 327 (1960).

By contrast, the purpose of the article of the Uniform Commercial Code within which "consumer goods" are defined (A.R.S. §§ 44–3101 *et seq.*) is to govern and protect the perfection of security interests arising from certain commercial transactions. A.R.S. §§ 44–3102 and 44–3104.

It need not be discussed at length how the purposes of the two Acts differ. It is sufficient to observe that the statutes do not pertain to the same policies or purposes

1. "Consumer goods" are defined in A.R.S. § 44–3109.1 as follows:
Goods are:
1. "Consumer goods" if they are used or bought for use primarily for personal, family or household purposes.
"Goods" are defined in A.R.S. § 44–3105A.10 (Supp.1981) as follows:
10. "Goods" includes all things which are movable at the time the security interest attaches *or which are fixtures* (§ 44–3134), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, or minerals or the like (including oil and gas) before extraction. "Goods" also includes the unborn young of animals, growing crops and standing timber which is to be cut and removed under a conveyance or contract for sale. (Emphasis supplied.)

and that the Uniform Commercial Code definition of "consumer goods" is not necessarily conclusive in arriving at a definition of the same term contained in the Employment Security Act.

We next consider whether the Department abused its rulemaking authority in A.C.R.R. R6–3–1720 by excluding "fixtures" from the statutorily undefined term "consumer goods" found in A.R.S. § 23–617.22.

The rule that legislative powers cannot be delegated to administrative bodies does not mean that administrative bodies may not make rules and regulations supplementing legislation for the complete operation and enforcement of the act, if such rules and regulations are within the standards specifically set forth by the legislature. *Haggard v. Industrial Commission,* 71 Ariz. 91, 223 P.2d 915 (1950).

A.R.S. § 41–1954(A)(3) directs the Arizona Department of Economic Security to "[a]dopt rules and regulations it deems necessary or desirable to further the objectives and programs of the department." The statute being silent as to a definition of "consumer goods", a legitimate exercise of rulemaking power would be to supply the missing definition, as long as the definition adopted is consistent with the legislative intent. We find nothing in the legislative intent here which would mitigate against a definition excluding "fixtures" from the general run of "consumer goods" which are sold door-to-door. We therefore find that the Department's exclusion of "fixtures" from the statutory term "consumer goods" as used in A.R.S. § 23–617.22 is consistent with the Department's power and duty to adopt rules and regulations which further the objectives of the Employment Security Act.

It remains to be determined, then, whether the Appeals Board had sufficient evidence upon which it could find that the solar water heating system involved in this particular case is a fixture and that individuals involved in the door-to-door sale of the solar water heating system are not exempt for purposes of the employer's contributions to the Unemployment Insurance Fund. As noted by appellee, a fixture has three elements: 1) annexation to the realty or something appurtenant thereto; 2) adaptability of application of the chattel affixed to the use or purpose to which the realty is appropriated; and 3) the intention of the party making the annexation to make a permanent accession to the freehold. *Price v. Sunmaster,* 27 Ariz.App. 771, 558 P.2d 966 (1976).

We first consider the intention of the party making the annexation. Generally, it is presumed that where the owner of the merchandise is also the owner of the realty, permanent accession to the freehold is intended. *See* 35 Am.Jur.2d, Fixtures, § 8 (1967). Secondly, we consider the adaptability or application of the merchandise to the use or purpose to which the realty is appropriated. Clearly, a hot water system used by household members is consistent with the use of a residence.

Applying the final consideration, we examine the annexation of the solar water heating system to the realty. In this regard, appellant has suggested, by reference to the minutes of one senate committee hearing, that it was intended that sales of solar heating systems be exempted when A.R.S. § 23–617.22 was enacted. Appellant argues, by analogy, that a representative of the Department of Economic Security conceded that *security systems* would be included in the exemption. This is not accurate. The testimony referred to speaks of "devices" not "systems." There are certainly movable security devices which may or may not constitute "fixtures." Moreover, we find that a comment at a senate committee hearing cannot be viewed as a stance or position of the Department as a whole. The Department speaks through its regulations and its case holdings.

Regarding the physical annexation of the solar water heating system to the residence, we note that the Appeals Board made this specific finding:

18. The solar water heater is installed on the roof of a home. It entails the

following operations: the existing water heater is removed; the new storage tank and back-up water heater is put in place; the two are piped together; two collectors are mounted and bolted to the roof by lag screws; and a pipe is run from the heat encharger to the two collectors. Disconnecting the unit from a home results in holes in the roof, attic or ceiling. The shingles have to be repaired and the holes in the roof have to be sealed. Holes in the ceiling directly under the roof would have to be fixed by hiring a contractor to drywall and repair the ceiling.

In *Voight v. Ott,* 86 Ariz. 128, 341 P.2d 923 (1959), the Court considered whether an air conditioning system was a fixture under the facts of that case. The Court stated:

A residence usually has one use only, which is as a home for the occupant. In new construction today where an air conditioning system is installed and built into the structure, it is done as an integrated system of heating and cooling and it extends throughout the entire structure, usually having as its component parts pipes, electrical wiring, instruments for control of its operation, gas or other heating pipes, ducts to convey the air, blowers to move the air, a furnace to heat the air, a refrigeration unit to cool the air, and a compressor, all of which items may be of different types of manufacture and varying methods of installation, but basically composing a heating and cooling system throughout the house and which is intended for the comfortable and convenient living of the occupants.

86 Ariz. at 134, 341 P.2d at 927.

In *Voight,* the owner testified that the air conditioning system was necessary for convenient living in the home and indicated, through his testimony, that his intent in purchasing the system was that it become an integral part of the realty. Based on that showing, the Court found that the air conditioning system was a part of the realty. The reasoning underlying air conditioning systems is equally applicable to the solar hot water system involved here.

We find that the factual determination of the Appeals Board is supported by the testimony presented to the Appeals Board hearing officer. Viewed most favorably to supporting the Board's decision, the testimony is sufficient to show annexation to the realty. Thus we find an objective intent on the part of the owners of the realty to make the solar water heating system a permanent accession to their residence. We find that a solar water heating system is adaptable to the residential use of the structure such as a home, and finally, we find that the evidence is sufficient to show annexation to the realty.

We further note that the door-to-door salespersons in question in this appeal sell an entire "package" which includes not only the materials such as the solar panels, piping and the hot water heater, but also includes the installation of the materials by Energy Control Services, Inc. The testimony at the hearing before the Appeals Board's hearing officer showed that no commissions were earned until the contract was completed and the equipment installed. The price of the installed solar water heating system is $3,700. Thus we do not find appellant's argument persuasive that at the time the salesman consummates the sale of the solar water heating system, it is a chattel which later may or may not become a fixture. It is unreasonable to argue that the system does not constitute a fixture when the contract of sale contemplates installation and charges a price for such installation.

We hold, based on the foregoing, that the Department of Economic Security did not overreach its rulemaking authority in excluding fixtures from the definition of "consumer goods" as that term is used in A.R.S. § 23–617.22. Secondly, in applying the three-pronged test to determine whether the equipment in this case comprises a fixture, we find adequate testimony to support each test and hold that the Appeals Board was correct in finding that the solar water heating system in this case is a fixture. It follows that the Appeals Board correctly determined that the door-to-door sale of solar water heating systems, under

the facts of this case, is not exempt employment pursuant to A.R.S. § 23–617.22. Appellant is required to contribute to the Unemployment Insurance fund in relation to commissions or wages paid in connection with the sale and installation of the solar water heating systems in this case.

Affirmed.

JACOBSON, P.J., and CONTRERAS, J., concur.