706 P.2d 1251

**PINTO VALLEY COPPER CORPORATION,**
Appellant,

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an** agency, Appellee.

**No. 1 CA–UB 414.**

Court of Appeals of Arizona, Department D, Division 1.

Sept. 5, 1985.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

MEYERSON, Presiding Judge.

■ This appeal requires us to construe A.R.S. § 23–733(A) which is the section of Arizona's Employment Security Act, A.R.S. §§ 23–601 to 23–799 (Act) which requires a successor employer to make unemployment compensation fund contributions which reflect the experience rating of the predecessor employer. Given the legislature's clear intention to protect Arizona's workers from the burdens of involuntary unemployment and the numerous references throughout the unemployment compensation statutes to employment and employers *within this state*, we conclude that A.R.S. § 23–733(A) applies whenever a successor employer acquires a predecessor's organization, trade or business as it exists in Arizona, or acquires substantially all of the assets of an organization, trade or business located in Arizona.

## I. FACTS

Cities Service Company (CSC) is a highly diversified, multi-billion dollar international corporation which owned several mining operations in the Globe-Miami area of Arizona. In 1983, Pinto Valley Copper Corporation[1] (Pinto Valley) purchased all of CSC's mining and mining-related operations located in Arizona. These operations were less than 1% of CSC's assets.

Despite the parties' agreement to the contrary, the Arizona Department of Economic Security (DES) refused to classify Pinto Valley as a new employer. Instead, DES assigned to Pinto Valley the employer account number and prior experience rating of CSC. As a result, Pinto Valley was assessed a higher rate of contribution to the unemployment compensation fund.

1. Pinto Valley is a wholly owned subsidiary of Newmont Mining Corporation.

Pinto Valley sought administrative review of this determination, arguing that it could not be a successor to CSC because the mining operations it purchased constituted neither the entire "organization, trade or business" of CSC, nor "substantially all of the assets" of CSC.

The Unemployment Insurance Appeals Board (Appeals Board) affirmed the determination of successorship on the grounds that Pinto Valley did in fact acquire "all [of] the mining and related operations of Cities Service located in the State of Arizona." The Appeals Board noted its concern that "[a]ny extension of that interpretation [of § 23–733(A)] so as to include the totality of Cities Service holdings and operations would defeat the legislative intent and invite widespread abuse." Pinto Valley then brought this appeal.

## II. A.R.S. § 23–733(A)

■ We are confronted in this appeal by an apparent ambiguity in the Act's statutory provision regarding the rate of contribution assessed to successor employers.

> When any employing unit in any manner succeeds to or acquires the organization, trade or business, or substantially all of the assets thereof ... and continues such organization, trade or business, the account of the predecessor employer shall be transferred as of the date of acquisition to the successor employer for the purpose of rate determination.

A.R.S. § 23–733(A). On its face, this statute is ambiguous in that it fails to tell us whether a predecessor's *entire* organization, trade or business must be acquired to trigger successorship, or whether only those businesses or assets located *in Arizona* were within the contemplation of the statute's drafters. If a statute is ambiguous on its face, this court must seek to ascertain the meaning intended by the legislature from the language used in the statute, aided by the canons and rules of statutory construction. *Greyhound Parks v. Waitman,* 105 Ariz. 374, 464 P.2d 966 (1970).

■ One cardinal rule of statutory construction is that statutory provisions must be considered in the context of the entire statute, and consideration must be given to all of the statute's provisions so as to arrive at the legislative intent manifested by the entire act. *One Hundred Eighteen Members v. Murdock,* 140 Ariz. 417, 419, 682 P.2d 422, 424 (App.1984). This principle is particularly useful in the case before us, because we find specific language in several sections of the Act which indicate that the legislature's intent was to have DES consider the transfer of only a business or assets located in Arizona in determining whether the successorship provision should apply to a particular new employer.

■ The term "employer" is defined in terms of an "employing unit." A.R.S. § 23–613(A). "[E]mploying unit" is defined as "an individual or type of organization ... which has ... one or more individuals performing services for it within this state." A.R.S. § 23–614(A). *See generally* A.R.S. §§ 23–614(B), to 23–615(1). Thus, applying the definitional sections of the Act, "predecessor employer" refers to a predecessor organization which has one or more individuals performing services within Arizona. This interpretation furthers the legislative goal of protecting persons who work within Arizona, and encouraging those who employ Arizona residents to provide stable employment. *See* A.R.S. § 23–601. Given this goal, the legislature must have intended to design a system which insures that the transfer of any business operation in Arizona which provides employment for Arizona workers not interrupt or reduce the flow of appropriate employer contributions to the compensation fund. *Warehouse Indem. Corp. v. Arizona Dep't of Econ. Sec.,* 128 Ariz. 504, 505, 627 P.2d 235, 236 (App.1981).

■ In order to prevent such a reduction in the amount of employer contributions, the legislature included in the Act a successorship statute providing for the transfer of a predecessor employer's experience rating. The practical result is that the historically established risk of involuntary employment in the particular business being

transferred is properly reflected in the contribution rate which is assessed to the new "successor" employer. Clearly, the goals of the Act would be defeated if the successorship statute were not applicable simply because a business is transferred and the predecessor employer happens to own businesses or other substantial assets outside Arizona. The existence of such foreign holdings is in no way significant to Arizona's unemployment compensation program. Thus, we conclude that only an "organization, trade or business" or substantial assets located in Arizona need be acquired to trigger the statute's requirement that a successor employer assume the predecessor employer's experience rating for the purposes of contribution rate determination.

■ Pinto Valley alleges that the Appeals Board erred in treating the Globe-Miami mining operations as an "organization, trade or business" under the statute. The question of whether an organization, trade or business under the Act has been acquired is primarily a factual one to be considered by the Appeals Board, and we will not disturb its findings on review if they are supported by any reasonable interpretation of the record. *Kane v. Arizona Dep't of Econ. Sec.,* 127 Ariz. 143, 618 P.2d 637 (App.1980). Because we have not been provided with a transcript of the proceedings before the Appeals Board, we are obliged to accept its findings. From the specific facts set forth in its findings, it appears that the Appeals Board could reasonably conclude that CSC's mining operations in Arizona constituted a single going concern, and that Pinto Valley acquired everything that went to make up a complete and integrated employing enterprise which it continued to operate.

■ Pinto specifically urges that certain assets [2] retained by CSC indicate a lack of intent to transfer a complete business oper-

ation. Looking to the substance rather than to the form of this transaction in order to effectuate the statute's underlying purpose, *Levy v. Arizona Dep't of Econ. Sec.,* 132 Ariz. 1, 3, 643 P.2d 704, 706 (1982), the facts as found by the Appeals Board support the conclusion that the mining operations acquired by Pinto Valley fall squarely within the phrase, "organization, trade or business" as used in A.R.S. § 23–733(A). These circumstances include (1) the amount and nature of assets [3] transferred, (2) the continuity of management personnel and employees (Pinto Valley retained all of CSC's employees at the time of the sale), (3) the similarity of procedures used in conducting the mining business after the transfer, (4) the lack of interruption of the ongoing business during the transfer, and (5) Pinto Valley's capacity to continue the same business as an employing unit. *See Levy v. Arizona Dep't of Econ. Sec.,* 132 Ariz. at 3, 643 P.2d at 706. The foregoing, together, constitute a "sufficient number of the usual incidents of the acquisition of an entire business so that the enterprise could be expected to continue relatively uninterrupted by the transfer of ownership." *Cornwall Industries, Inc. v. Maine Dep't of Manpower Affairs,* 351 A.2d 546, 551 (Me.1976). Because we decide that the property transferred in this case falls within the phrase, "organization, trade or business" we need not consider Pinto Valley's arguments pertaining to the alternative phrase, "substantially all of the assets."

■ The single most important fact to be considered in this case is the continuity of employment which exists between the predecessor employing unit, CSC, and the successor employing unit, Pinto Valley— Pinto Valley continued to perform essentially the same operations with substantially the same work force as had CSC immediately prior to the sale. *See Warehouse*

**2.** CSC retained oil, gas and geothermal rights, computer hardware and software, the "Cities Service" trade name, CSC bank accounts and corporate stock.

**3.** The tangible assets transferred to Pinto Valley include real property, vehicles, buildings, rolling stock and moveable equipment, telephone numbers, customer lists, a concentrator, and leeching and electrowinning operations.

*Indem. Corp. v. Department of Econ. Sec.*, 128 Ariz. at 507, 627 P.2d at 238. In addition, there was no interruption of operations, all facilities used by Pinto Valley had previously been used by CSC, and the same work schedules were maintained. The fact that CSC owns assets outside of Arizona which dwarf the value of the assets transferred to Pinto Valley is inconsequential in determining the continuing risk of involuntary unemployment to former CSC workers who are now similarly employed by Pinto Valley.

▮ Pinto Valley also argues that because CSC still owns valuable real property within Arizona, this transfer is outside the successor statute, even if consideration is limited to transferred assets or businesses within Arizona. Such a construction would be in conflict with the express wording of the statute, which indicates that the transferred property to be considered in determining successorship is either a particular organization, trade or business, or substantially all of the assets of a particular business. Thus, assets totally unrelated to the operation of a particular business obviously were not meant to be weighed in the balance. In this case, Pinto Valley acquired an ongoing mining business located in Arizona. It is logically and factually irrelevant that CSC also continues to own wholly unrelated real property in Arizona.[4]

For all the reasons stated herein, the decision of the Appeals Board is affirmed.

JACOBSON, C.J., and HAIRE, J., concur.

---

4. If an enterprise has multiple businesses in Arizona, a successor entity acquiring a "severa-

ble portion" may apply for a transfer of the account of the "portion." A.R.S. § 23–733(B).