18 P.3d 108

**CONFERENCE RESOURCE SPECIALISTS OF ARIZONA, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**DEPARTMENT OF ECONOMIC SECURITY APPEALS BOARD, Defendant–Appellee.**

No. 1 CA–TX 00–0004.

Court of Appeals of Arizona, Division 1, Department T.

Jan. 4, 2001.

Review Denied May 23, 2001.*

* Vice Chief Justice Jones voted to grant review.

Ulrich & Anger, P.C. by Paul G. Ulrich and Ellen B. Davis and Richard R. Schmal, Ltd. by Richard R. Schmal, Phoenix, Attorneys for Appellant.

Janet A. Napolitano, Attorney General by Kevin R. Smith, Assistant Attorney General, Phoenix, Attorneys for Appellee.

## OPINION

EHRLICH, Judge.

¶ 1 Conference Resource Specialists of Arizona, Inc. ("CRSA") appeals from the tax court's judgment upholding a determination of the Arizona Department of Economic Security Appeals Board ("the Board") that CRSA did not qualify as a "successor" employer to non-party Scottsdale Conference Center ("Owner") and, therefore, was not entitled to retain Owner's unemployment insurance account experience rating and tax rate under Arizona Revised Statutes ("A.R.S.") section 23–733(A) (1995) and Arizona Administrative Code ("A.A.C.") R6–3–1713. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 At the time material to this case, Owner, a limited partnership, owned the Scottsdale Conference Center and Resort Hotel ("Hotel"). In 1991, Owner engaged non-party International Conference Resorts, Inc. ("Operator") to manage and operate the Hotel. As manager, Operator had control over the Hotel's employees, including paying their wages with Owner's funds, although Owner remained the employing unit according to Arizona unemployment insurance law.

¶ 3 In early 1997, Owner and Operator amended their management agreement to provide that Operator or an independent employment company selected by Operator would from then on employ all Hotel personnel in lieu of Owner. Operator entered an agreement with CRSA pursuant to which CRSA hired all Owner's Hotel employees

and agreed to provide Operator with "all personnel and staff management services reasonably necessary and required to operate" the Hotel. The agreement between CRSA and Operator provided that CRSA would neither have nor acquire any ownership or equity interest in Owner's business or property.

¶ 4 Operator continued to manage the Hotel, and Owner continued to fund the Hotel employees' wage and benefit payments, now made by CRSA rather than Operator. The employees' jobs, wages and benefits did not change, and the employees continued to report to their supervisors as before.

¶ 5 The Arizona Department of Economic Security ("DES") originally assigned CRSA a new account number with a concomitant tax rate of 2.7 percent. DES thereafter determined to assign Owner's unemployment insurance account number to CRSA and set CRSA's tax rate at Owner's existing rate of 0.66 percent. Three weeks later, however, DES again reconsidered, reassigning to CRSA its original account number and 2.7 percent tax rate. CRSA protested this action and exhausted its administrative remedies before DES and the Board, each of which upheld the higher taxer rate.

¶ 6 CRSA then filed this action in the tax court to review the Board's decision on the administrative record. A.R.S. § 41–1993 (1999). The tax court ruled for the Board, holding that, although CRSA had "succeeded" to all of Owner's employees, it did not succeed to or acquire Owner's "organization, trade or business or substantially all the assets thereof" as required for an unemployment insurance tax rate transfer. A.R.S. § 23–733(A). CRSA moved unsuccessfully for reconsideration. Formal judgment was entered, and CRSA appealed.

## DISCUSSION

### A. Standard of Review

¶ 7 DES cites *Pinto Valley Copper Corp. v. Arizona Department of Economic Security*, 146 Ariz. 484, 486, 706 P.2d 1251, 1253 (App.1985), for the proposition that "the question whether an employing unit has succeeded to or acquired an organization, trade,

or business, or substantially all of the assets thereof, is primarily a factual one to be considered by the Appeals Board." DES accordingly argues that we must affirm the Board's decision if it is supported by any reasonable interpretation of the record, citing *Baca v. Arizona Dep't of Economic Sec.*, 191 Ariz. 43, 46, 951 P.2d 1235, 1238 (App. 1997), and *Warehouse Indem. Corp. v. Arizona Dep't of Economic Sec.*, 128 Ariz. 504, 505, 627 P.2d 235, 236 (App.1981). We disagree.

¶ 8    *Pinto Valley Copper* does not support DES's implicit contention that the issue of successorship under A.R.S. section 23–733(A) is predominantly one of fact. Rather, while the appellate court is bound by the Board's findings of fact unless no reasonable evidence supports them, we are not constrained by the Board's legal conclusions from those findings.

¶ 9    There is no dispute about the relevant facts. At issue is the way in which the applicable law applies to those facts. The question before the Board, the tax court and this court was and is at most a mixed question of law and fact reviewed *de novo*. *In re U.S. Currency in the Amount of $26,980.00*, 193 Ariz. 427, 429, ¶ 5, 973 P.2d 1184, 1186 (App.1998).

■   ¶ 10    The Arizona Employment Security Act, of which A.R.S. section 23–733 is a part, is remedial legislation. We therefore interpret it liberally to effectuate the legislative purpose. *Warehouse Indem. Corp.*, 128 Ariz. at 507, 627 P.2d at 238.

*B.   Discussion*

■   ¶ 11    The pivotal statute at issue is A.R.S. section 23–733(A):

> When any employing unit [1] in any manner succeeds to or acquires the organization, trade or business, or substantially all of the assets thereof, excepting any assets retained by such employer incident to the liquidation of his obligations, whether or not such acquiring employing unit was an employer within the meaning of § 23–613, prior to such acquisition, and [2] continues such organization, trade or business, the account of the predecessor employer shall

be transferred as of the date of acquisition to the successor employer for the purpose of rate determination.

If the "organization, trade or business" "constitutes all of the predecessor's employment generating enterprise upon which the experience rating account was primarily established,"[1] then the taxpayer who succeeds to or acquires and continues the business "shall be determined a successor under the provisions of A.R.S. § 23–733(A) and receive the experience rating of the predecessor. . . ." A.A.C. R6–3–1713(B)(1).

¶ 12    CRSA notes that there is no indication in the record of any increased risk of involuntary unemployment as a result of its succession to Owner's Hotel employees. It argues that, under such circumstances, the legislative purpose behind the statute is served and that there is no reason to increase the applicable unemployment tax rate.

¶ 13    The practical reality of the situation indeed militates in favor of CRSA's position. CRSA functions strictly as a payrolling entity, a mere proxy employer for Owner and Operator. The Board does not contend and there is no indication in the administrative record that CRSA's incorporation into Owner's Hotel business operation created any risk of increased unemployment. Operator continues to manage the Hotel operation as before, and Owner continues to fund the Hotel's payroll costs as before. However, neither the statute nor the regulations support CRSA's claim to successor-employer status. If indeed there is an omission in the regulatory scheme, the gap must be addressed to the legislature, not this court.

¶ 14    First, CRSA contends that "succeeding to" and "acquiring" are provided as qualitatively distinct alternatives in A.R.S. section 23–733(A) and that its succession to Owner's employees was therefore sufficient, even though CRSA actually "acquired" none of Owner's business or assets. We are compelled to disagree because, considered as a whole, the statutory language belies that view.

---

**1.**   This is subject to exceptions that do not apply.

¶ 15 "Succeed to" and "acquire" in A.R.S. section 23–733(A) were plainly not intended to carry different meanings. Section 23–733(A) itself uses the concepts of succession and acquisition interchangeably, characterizing the consequence of meeting the criteria that it prescribes in this way: "[T]he account of the predecessor employer shall be transferred as of the date of **acquisition** to the **successor** employer for the purpose of rate determination." (Emphasis added.) Every other subsection of section 23–733 likewise uses the words "succeed" and "successor" and "acquire" and "acquisition" interchangeably. For example, section 23–733(C) provides: "If the **successor** employer was an employer subject to this chapter prior to the date of **acquisition** of an organization, trade or business, or substantially all of the assets thereof, his rate of contributions for the remainder of the calendar year in which the **acquisition** occurred shall be his rate as previously assigned for the calendar year in which the **acquisition** occurred." (Emphasis added.) *See also* subsection (B)(second sentence); subsection (C)(first, second, fourth and fifth sentences); subsection (E) (second sentence); A.A.C. R6–3–1713(A)(2)(An "organization, trade or business" as used in section 23–733(A) "is **acquired** if the factors of an employer's organization, trade or business **succeeded to** are sufficient to constitute an entire existing operating business unit. . . .")(Emphasis added.); *compare* subsection (D) *with* subsection (E)(first sentence). CRSA simply is mistaken in maintaining that "succession" and "acquisition" carry sufficiently distinct meanings in section 23–733 to support its contention.

¶ 16 CRSA also argues that its succession to Owner's Hotel employees entitled it to "successor employer" status because, according to A.A.C. R6–3–1713, "succeeding to" may be done "in any manner," and the qualifying succession or acquisition may include "all or part of an organization, trade or business." CRSA contends that Owner's continuing control and influence over "parts" of Owner's business other than the Hotel employees did not disqualify CRSA as a successor employer within A.R.S. section 23–733(A) and A.A.C. R6–3–1713(A)(3). We disagree.

¶ 17 The phrase "in any manner" in A.A.C. R6–3–1713(A)(1) does not suggest that an entity may "succeed to" an employer's "organization, trade or business" by "succeeding to" its employees alone. Rather, as that rule makes clear, the meaning is much different:

A business may be acquired or succeeded to "in any manner" which includes, but is not limited to, acquisition by purchase, lease, repossession, bankruptcy proceedings, default, or through the transfer of a third party.

Thus, and contrary to CRSA's analysis, the phrase "in any manner" neither can nor does negate the fundamental statutory requirement that the putative successor employer actually have succeeded to or acquired an "organization, trade or business." A.R.S. § 23–733(A). The phrase functions only to broaden the scope of permissible legal mechanisms and processes by which the putative successor succeeds to or acquires the business in question.

¶ 18 Similarly, CRSA takes the phrase "all or part of an organization, trade or business" in A.A.C. R6–3–1713(A)(3) out of its proper context. The introductory sentence of A.A.C. R6–3–1713(A)(3) provides in relevant part:

For the purpose of determining successorship status under A.R.S. §§ 23–613(A)(3) and 23–733(A) or (B), an individual or employing unit who in any manner acquires or succeeds to **all or a part of** an organization, trade or business from an employer as defined in A.R.S. § 23–613 shall be deemed the successor employer provided the organization, trade or business is continued. [Emphasis added.]

¶ 19 Viewed as a whole, however, A.A.C. R6–3–1713(A)(3) does not provide or imply that any identifiable fraction or component of an organization, trade or business may be deemed equivalent to the organization, trade or business itself. The regulation focuses on the distinct criteria for "continuation" of a business once succeeded to or acquired. A.A.C. R6–3–1713(A)(3)(second and third sentences). The introductory clause of the first sentence of R6–3–1713(A)(3) refers to both subsections (A) and (B) of A.R.S. sec-

tion 23–733. In turn, section 23–733(A) concerns succession to or acquisition of an entire organization, trade or business, or substantially all its assets, whereas section 23–733(B) concerns succession to or acquisition of "a distinct and severable portion" of an organization, trade or business. The reference in R6–3–1713(A)(3) to "a part of" an organization, trade or business thus simply applies the general "continuation" principles of that provision to the transfer of an account for a distinct, severable portion of an employing unit.

¶ 20   Contrary to the necessary implications of CRSA's analysis, A.R.S. section 23–733(B) does not apply to this case at all. The Hotel employees certainly were distinct from the employing unit but plainly not "severable" from it. Indeed, the status of an employer's "staff of employees" is only one of nine distinct factors to be considered in determining whether an "organization, trade or business" has been acquired. A.A.C. R6–3–1713(A)(2)(a)–(i); *see Levy v. Arizona Dep't of Economic Sec.*, 132 Ariz. 1, 3, 643 P.2d 704, 706 (1982)(listing other factors). Like subsection (1) of A.A.C. R6–3–1713(A), subsection (3) does not support the view that succession to an employer's "organization, trade or business" may be accomplished by succeeding to its work force alone.

¶ 21   By itself, the Hotel staff was not an "organization, trade or business." The staff was not "everything that went to make up [the] complete and integrated employing enterprise...." *Pinto Valley Copper*, 146 Ariz. at 487, 706 P.2d at 1254. As the Board determined:

> Here, the undisputed evidence of record establishes that [CRSA] did not succeed to [Owner's] organization, trade or business. All [CRSA] did was to contract with [Owner], through [Operator], to supply employees for [Owner's] operation. In fact, it was [Owner] which was the employment generating enterprise....

*See* A.A.C. R6–3–1713(A)(2)(An "organization, trade or business" within A.R.S. section 23–733(A)–(D) is acquired only "if the factors of an employer's organization, trade or business succeeded to are sufficient to constitute

an entire existing operating business unit as distinguished from the acquisition of merely dry assets from which a new business may be built.").

■   ¶ 22   CRSA also is wrong in contending that it was entitled to successor employer status under the "Special Provisions" in A.A.C. R6–3–1713(B)(1), which provides in relevant part:

> An individual or employing unit shall be determined a successor under the provisions of A.R.S. § 23–733(A) and receive the experience rating account of the predecessor when the organization, trade or business acquired or succeeded to constitutes all of the predecessor's employment generating enterprise upon which the experience rating account was primarily established....

The Hotel staff did not constitute "all" of Owner's "employment generating enterprise upon which the experience rating account was primarily established." The staff was the "employment" but not the enterprise that generated it.

¶ 23   In its reply brief, CRSA interprets the reference to A.R.S. section 23–733(B) in the Board's answering brief as acknowledging that CRSA failed to obtain successor status under that statute merely because it did not file the right form. The Board does not make that argument. It cites section 23–733(B) only to account for the "all or a part of" language in A.A.C. R6–3–1713(A)(3), as we have done. Moreover, CRSA's companion argument that it qualified as a "successor employer" under section 23–733(B), made for the first time on appeal, fails for the same reason that CRSA's analysis fails under section 23–733(A). CRSA succeeded only to Owner's employees, not Owner's "organization, trade or business" or a "distinct and severable portion" of it.

¶ 24   The Board and the tax court correctly held that CRSA's succession to Owner's Hotel employees did not constitute a succession to Owner's "organization, trade or business" within the meaning of A.R.S. section 23–733.[2] Accordingly, CRSA was not enti-

---

2.   Because of our disposition, we need not consid-

er whether to judicially notice materials outside

tled to retain Owner's unemployment insurance tax rate. The judgment is affirmed.

CONCURRING: JEFFERSON L. LANKFORD, Judge, and ANN A. SCOTT TIMMER, Judge.

the administrative record on which CRSA relies for the proposition that its succession to Owner's Hotel employees did not in fact result in an increased risk of unemployment.