513 P.2d 1343

**EMPLOYMENT SECURITY COMMISSION of Arizona, Appellant,**

v.

**The VALLEY NATIONAL BANK OF ARIZONA, Appellee.**

**No. 1 CA–CIV 1798.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 13, 1973.

Rehearing Denied Oct. 23, 1973.

Review Denied Nov. 20, 1973.

Gary K. Nelson, Atty. Gen., by James A. Tucker and Walter A. Chapko, Asst. Attys. Gen., Phoenix, for appellant.

Meyers & Curtis, by Donald D. Meyers, Phoenix, for appellee.

## OPINION

JACOBSON, Chief Judge, Division 1.

The sole question raised on this appeal is whether the employer discharged an employee for "compelling personal reasons" under A.R.S. § 23–727, subsec. D, which would preclude the employer's experience rating being charged for employment security benefits paid the employee.

Appellee, Valley National Bank of Arizona (Bank), as the employer, initiated an action in the Superior Court of Maricopa County seeking a judicial review of a decision of the appellant, Employment Security Commission of Arizona (Commission), which held that the Bank had discharged an employee, Donna Shelor,[1] under conditions which would subject the Bank's experience rating to charges for unemployment benefits paid to the employee. The Superior Court reversed this decision, holding, in part:

> ". . . that the employee, Donna Shelor, was discharged from her employment by the Valley National Bank, her employer, for compelling personal reasons not attributable to the employer and not warranting disqualification from benefits to the employee and that the benefits paid to the employee shall not be used as a factor in determining the future contribution rate of the employer, the Valley National Bank . . . ."

1. The employee, having received the benefits she was entitled to under the Employment Security Act, was not a party to the Superior Court action, and is not a party to this appeal.

It is this judgment which the Commission seeks to review by this appeal.

Before discussing the facts of this case, it is necessary to lay the statutory background upon which the facts operate. In 1936, the Arizona Legislature enacted the Employment Security Act (A.R.S. Title 23, Chapter 4), for the avowed purpose of lessening the burdens of involuntary unemployment and to encourage employers to provide more stable employment. A.R.S. § 23–601. The Act provided that an employee who, under stated conditions, becomes unemployed is entitled to receive certain unemployment benefits for stated periods of time. *See*, A.R.S. § 23–771 et seq. The payment of these employee benefits, is funded, in part, by contributions made by the various employers in the state. A.R.S. § 23–726. The Commission maintains a separate account for each employer which reflects all contributions made by the employer and all charges for benefits paid to former employees of that employer. A.R.S. § 23–727, subsec. A.

The standard rate of contribution by employers is set at 2.7% of the wages paid by the employer during the calendar year. A.R.S. § 23–728. However because deficiencies or excesses may occur in a particular employer's accounts, adjustments in the standard rate paid by an employer may be made, either increasing or decreasing that rate, depending upon the employer's experience rating in the Commission's payment of benefits to ex-employees of that employer. A.R.S. §§ 23–730, 23–731.

The legislature realized, however, that unemployment may occur under circumstances which would have no bearing on the policy of encouraging stable employment, and for this reason the employer's experience rating for determining future contributions of the employer should not be charged for benefits paid such a separated employee. It is with this non-chargeability policy that we are concerned in this appeal. In particular, the Bank relies upon the provisions of A.R.S. § 23–727, subsec. D as authority that the unemployment benefits paid Donna Shelor should not be charged to its experience rating. This statute, in pertinent part, provides:

> "Benefits paid to an individual whose separation from work with any employer occurs under conditions found by the commission to be within the provisions of paragraphs 1 or 2 of § 23–775, or *for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits,* shall not be used as a factor in determining the future contribution rate of the employer from whose employment the individual so separated . . . ." (Emphasis added.)

With this statutory background and the legal issues thus framed, the basically undisputed facts in this case are as follows. Donna Shelor was first hired by the Bank in February, 1967, first as a clerk and later as a teller, and was initially regarded as a good employee. However, beginning in January 1968, the employee started missing work. During the first seven months of 1968, she was absent a total of 29 full days and three partial days. In addition, her work showed a decline in performance, having a total of 63 cash differences, as a teller, from February to August, a figure over five times the average for a normal teller.

The decrease in attendance and efficiency was at first attributed to the illness of the employee's son during the winter and early spring of 1968. However, the employee herself began to feel increasingly run down and tired and came under a doctor's care. Her condition was diagnosed as a strep throat and a vaginal infection.

Both the employee's attendance and performance record were called to her attention by her immediate supervisor and she attributed these to her rundown condition. Because her record did not improve, she was placed on probation on June 1, 1968.

Finally, in July, 1968, the employee took a two-weeks unpaid leave of absence in order to completely regain her health. She returned to work on Monday, August 5,

1968, stating she had recovered and needed to go to work because of money problems. On August 7 and 8, the employee left work early, complaining of being tired, and on Monday, August 12, she missed work entirely because she was overly tired. On August 13, 1968, she was discharged by the Bank. When applying for unemployment benefits she stated that her discharge was for "health reasons." The Commission's deputy found that the evidence furnished by the employee's doctor substantiated her statement that she had been ill and that her inability to perform her work in a satisfactory manner had been due to her physical condition. Her doctor had released her for work as of August 5, 1968, and fully discharged her as of September 8, 1968.

While the Bank initially contested the charging of its experience rating on the grounds that the employee was guilty of misconduct (also a ground under A.R.S. § 23–727, subsec. D for non-chargeability), the Commission's deputy found that the employee was not guilty of misconduct, but that her decline in performance was due to a physical inability. The Bank stipulated that this finding, together with evidence as to the number of days missed from work and the number of her shortages as a teller would constitute the only evidence to be considered by the Commission in determining whether its experience rating should be charged. This was the same record upon which the Superior Court made its rulings. A.R.S. § 23–681, subsec. C.

The Bank contends that illness is a "compelling personal reason, not attributable to the employer" which would justify its discharging this employee without having unemployment benefits paid to that employee charged to its experience rating. The Commission, on the other hand, while conceding that the non-chargeability features of A.R.S. § 23–727, subsec. D are as applicable where the employer discharges an employee as where the employee terminates the employment, contends that the illness in this case did not reach the proportions of "compelling personal reasons" to satisfy the application of that statute.

We have previously set forth in this opinion those provisions of A.R.S. § 23–727, subsec. D which are controlling. However, for purposes of emphasis and clarity they are repeated here. A.R.S. § 23–727, subsec. D provides that benefits paid to an individual shall not be used as a factor in determining an employer's future contribution rates where the separation from work occurs for three stated reasons:

(1) Where the termination was the result of the employee leaving work voluntarily without good cause. A.R.S. § 23–775, subsec. 1.

(2) Where the termination was the result of a discharge by the employer for employee misconduct connected with the work. A.R.S. § 23–775, subsec. 2.

(3) Where the termination by either the employee or employer was "for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits."

It is upon this third ground that the Bank relies. The statute does not define "compelling personal reasons." In an attempt to remedy this lack of definition, the Commission has promulgated a document entitled "Benefit Policy Manual." This manual provides:

"However, the statute does not confine a finding that the separation was for compelling personal reasons to cases where the claimant quit, but under special circumstances also may include cases where the employer acted to terminate the claimant's services. Such circumstances occur:

"(1) When a claimant is released from employment because of an absence due to incarceration for a first offense when proper notice of the absence was given to the employer, or the claimant made a reasonable effort to furnish proper notice; or

"(2) When the claimant is discharged because of an illness which might endanger his own safety on the job or the safety of others, for

example: epilepsy, active tuberculosis; or

"(3) When the claimant is discharged because he is unable to properly perform his work due to a physical handicap which existed prior to his employment; or

"(4) When the claimant is discharged because his employer has entered into an agreement with another party (other than the claimant) which would result in a violation by the employer of a Federal or State law if the claimant is retained in employment."

The Bank argues that by the manual limiting the application of "compelling personal reasons" in illness cases to only those disabilities which existed prior to the employment and which are permanent in nature, the Commission has exceeded its statutory authority and has acted in an arbitrary and capricious manner. We would tend to agree, if we were convinced that the policy manual adopted by the Commission was intended to be a binding set of rules which had to be followed in all cases. However, it is apparent, both from the discussion before the Commission and in the Commission's own cases, that this manual is merely intended and is actually used as a guideline to help employees of the Commission in exercising their respective duties. These guidelines are not considered binding upon the Commission as is evident from the Commission's own cases which have been cited to us by both parties.

It is therefore necessary to attempt to ascertain the legislative intent in using the words "compelling personal reasons not attributable to the employer," the operative word being "compelling." By legislative directive (A.R.S. § 1–213), we must give the word "compelling" its usual and commonly understood meaning. "Compelling" is the present participle of the verb, compel, which is defined as: "Force, Drive, Impel; as to force by physical necessity or evidential fact . . . to force or cause irresistibly . . . ." Webster's 3rd. New International Dictionary (Una-

bridged). When used in this sense, we believe the legislature intended to differentiate between those situations where employment is terminated insofar as the employee is concerned for reasons beyond the employee's control and which would constitute good cause not attributable to the employer, and where the termination was without good cause. We are drawn to this conclusion because of the underlying philosophy of employment security benefits, that is, to alleviate the hardships connected with involuntary dismissal. Thus the statute provides, in the only situations applicable here, that an employee shall be *disqualified* for benefits if "he has left work voluntarily *without good cause* in connection with his employment," or "he has been discharged for misconduct connected with his work." These grounds for termination of employment will also relieve the employer from having his experience rating charged. A.R.S. § 23–727, subsec. D. It would thus appear that the legislature logically intended that if the termination, from the employer's standpoint, was also for reasons related to the employee, but beyond his control and not attributable to the employer, its rating experience would likewise not be charged.

In this regard we reach the same conclusion as that of the Supreme Court of Wisconsin (the only state the court has been able to find which allows non-chargeability to the employer on the basis of "compelling personal reasons"), that this term must have been intended by the legislature to be:

" ' . . . such a reason as would impel the same or similar action by an ordinary reasonable individual under the same or similar circumstances * * * (and) requires considerations and motives *which leave a claimant no reasonable alternative but to terminate* [the] employment.' " Western Printing & Lithographing Co. v. Industrial Commission, 260 Wis. 124, 50 N.W.2d 410, 414 (1951). (Emphasis added.)

We add here that the reason involved must by the language of our statute "not

be attributable to the employer and not warranting disqualification for benefits."

In this case, in our opinion, the Bank has sustained its burden of showing that there was "no reasonable alternative but to terminate the employment." What this showing of no reasonable alternatives must be, must, of necessity, depend upon the particular facts of the case. However, where the evidence before the Commission shows that the illness which caused the inadequate performance had not ceased at the time she returned to her employment and it appears from the actions of the employee herself that she was physically unable to adequately perform her duties in the immediate future, and the illness was not attributable to her employer and did not disqualify her from benefits, we are compelled to conclude that the Bank had "no reasonable alternatives" other than termination and therefore "compelling personal reasons" existed.

The judgment of the trial court is affirmed.

EUBANK, P. J., and HAIRE, J., concur.