528 P.2d 868

**WESTERN COACH CORPORATION,**
Appellant,

v.

**MALIBU CORPORATION, an Arizona corporation, and Alicia R. Luziana,**
Appellees.

**MALIBU CORPORATION, an Arizona corporation, Appellant,**

v.

**AMERICAN RELIABLE INSURANCE COMPANY, a foreign corporation qualified to do business in the State of Arizona; Central Arizona Adjustment Company, an Arizona corporation; and Resolute Insurance Company, a foreign corporation qualified to do business in the State of Arizona,**
Appellees.

No. 2 CA–CIV 1644.

Court of Appeals of Arizona,
Division 2.

Dec. 4, 1974.

Rehearing and Motion for Dismissal
of Appeal Denied Jan. 7, 1975.

Review Denied Feb. 11, 1975.

Parrott & Parrott, by Dennis L. Parrott, Tucson, for appellant Western Coach.

Healy & Beal, P. C., by Robert L. Beal, Tucson, for appellee and appellant Malibu Corp.

Slutes, Zlaket, Sakrison & Wasley, by John A. Wasley, Tucson, for appellees American Reliable Ins., Central Arizona Adjustment Co. and Resolute Ins.

## OPINION

HOWARD, Judge.

The facts most favorable to upholding the judgment of the trial court are as follows.

On February 15, 1971, one Alicia Luziana purchased a new 1971 Empress house trailer from E–Z Livin' Mobile Home Sales, Inc. on a retail installment contract. Pursuant to the provisions of said contract Mrs. Luziana also purchased from Resolute Insurance Company, the predecessor of American Reliable Insurance Company, insurance covering the house trailer. The installment contract also provided, "Purchaser hereby assigns to Seller the proceeds of all such insurance . . . to the extent of the unpaid portion of the Time Balance, directs any insurer to make payment directly to Seller, appoints Seller as Attorney In Fact to endorse any draft, and authorizes Seller to apply such proceeds to the payment of installments due or to become due hereunder."

The sales contract was assigned to appellant, Western Coach Corporation, the corporation which handled the securing of credit for E–Z Livin'. Mr. Max Morgan was the president of both Western Coach

and E–Z Livin' and he and his wife totally own both corporations. Western Coach in turn assigned the contract to Fidelity Acceptance Corp., which handled the financing for Western Coach Corp. Mr. Max Morgan also acted for and on behalf of Fidelity Acceptance Corp. in the handling of all losses and had the consent of Fidelity Acceptance to endorse Fidelity's name on all drafts received in connection with these losses. On July 19, 1971, subsequent to the assignment of the sales contract, the trailer was damaged by a windstorm.

Mr. Woody Smith, manager of the E–Z Livin' lot in Tucson told Mr. Morgan that Malibu Corporation had picked up the trailer and was going to repair it. Mr. Gene Simpson was the claims adjuster for Central Adjustment Company which handled the insurance claims for Resolute. He determined that the trailer could be repaired for approximately $4,600, a sum less than its replacement value. Both Mr. Simpson and Mrs. Luziana authorized Malibu to make the repairs. Mr. Simpson had a conversation with Mr. Morgan relating to the repairs and Mr. Morgan advised Mr. Simpson that ". . . he did not have any particular care one way or the other."

Malibu commenced making repairs but on August 17, 1971, Mr. Morgan contacted the adjusters and told them that he wanted no repairs to be done on the trailer. Malibu ceased its work on the trailer. Up to that point Malibu had incurred expenses of $1,641.60 for labor and materials in the repair of the trailer.

While the trailer was being repaired Mrs. Luziana became delinquent in her payments on the sales contract. On September 3, 1971, in lieu of foreclosure, Western Coach accepted her transfer of the title to the trailer.

On December 14, 1971, Resolute sent a draft to Western Coach in the sum of $4,697 payable to Fidelity, Western Coach, Malibu and Mrs. Luziana. This sum represented the amount estimated to repair the trailer and included any amounts due to Malibu. Mr. Morgan crossed Malibu's name off the draft and endorsed the name of the other payees. Through an oversight, the draft went through as altered and Western Coach received the total amount of the draft.

Western Coach attempted to obtain the trailer from Malibu but Malibu refused to surrender it asserting it had a lien for the amount of its repairs.

Western Coach then filed this replevin action. Malibu counterclaimed for the amount of its repairs and asserted a third party complaint against American Reliable Insurance Company and Resolute Insurance Company.

The trial court found that under A.R.S. § 33–1021, as amended, Malibu had a lien preference as against Western Coach and that if the applicable lien statute was A.R.S. § 33–1022, as amended, the mortgagee or its agent had knowledge that the insurance company and Alicia Luziana had authorized Malibu to make repairs on the trailer and failed to take timely action to stop said repairs. The trial court further found that Western Coach had no right to delete the names of Malibu and Alicia Luziana from the draft and that the alteration was material. The trial court then ordered that Western Coach take nothing by its complaint and that Malibu have judgment against Western Coach on its counterclaim in the sum of $1,641.60 plus storage costs in the sum of $288.90 and its tow bill in the sum of $47. It further ordered judgment against Malibu on its third party complaint.

Western Coach has appealed from the judgment and Malibu has cross-appealed from the judgment against it on its third party complaint.

Although there are several questions presented on review the question of which statute applies is dispositive of the appeal.

A.R.S. § 33–1021 provides:

"When an article, implement, utensil, garment, wearing apparel, or vehicle, except *motor vehicles,* is repaired or cleaned, pressed, glazed or washed, with

labor, with or without material, by a carpenter, mechanic, artisan or other workman, such person shall have a lien thereon for the labor or material and may retain possession thereof until the amount due is fully paid." (Emphasis added) A.R.S. § 33–1022(B) and (C) provides:

"B. Proprietors of garages, repair and service stations shall have a lien upon *motor vehicles* of very kind, and the *parts and accessories placed thereon,* for labor, materials, supplies and storage for the amount of the charges, when the amount of the charges is agreed to by the proprietor and the owner.

C. The lien shall not impair any other lien or conditional sale of record at the time the labor, materials, supplies and storage were commenced to be furnished, *unless furnished with the knowledge and consent of the record lienor or vendor.*" (Emphasis added)

Article 7, title 33 of the Arizona Revised Statutes pertains to personal property liens. Nowhere is the term "motor vehicle" defined. The parties cite other portions of our statutes such as Title 28, Motor Vehicles and refer to the definition of the terms "motor vehicle" and "trailer" contained therein. Definitions which pertain to statutes which serve another purpose and have nothing to do with the subject of liens are not persuasive. Champa v. Consolidated Finance Corp., 231 Ind. 580, 110 N.E.2d 289 (1953); Legum v. Carlin, 168 Md. 191, 177 A. 287 (1935).

How then is the word "motor vehicle" as used in A.R.S. §§ 33–1021 and 33–1022 to be defined? The answer is found in A.R.S. § 1–213. It provides:

"Words and phrases shall be construed according to the common and approved use of the language. . . ."

The foregoing rule of construction governs unless it clearly appears that some special or technical meaning was intended by the legislature. State ex rel. Frohmiller v. Hendrix, 59 Ariz. 184, 124 P.2d 768 (1942). Our perusal of the statutes in question reveals no legislative intent to impart some special or technical meaning to the word

"motor vehicle". Webster's Third New International Dictionary defines "motor vehicle" as "an automotive vehicle not operated on rails." In other words, it is a *self-propelled* vehicle.

The mobile home in question was not self-propelled nor was it an accessory placed on a motor vehicle. A.R.S. § 33–1021 was the applicable statute and the trial court did not err in its judgment.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

### Order on Costs

It is ordered that the Appellees American Reliable Insurance Company, Central Arizona Adjustment Company and Resolute Insurance Company be, and they hereby are, awarded their costs on appeal in the sum of Twenty-six and No/100 ($26.00) Dollars.

It is further ordered that the Appellee and Appellant Malibu Corporation be, and they hereby are, awarded costs on appeal in the sum of Eighty-eight and No/100 ($88.00) Dollars.