757 P.2d 1067

**SOUTHWESTERN TEAMSTERS SECURITY FUND, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, Appellee.**

**No. 1 CA–UB 536.**

Court of Appeals of Arizona, Division 1, Department B.

June 28, 1988.

Ward & Keenan, Ltd. by David L. Niederdeppe, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

## OPINION

GREER, Judge.

The sole question raised on this appeal is whether the Southwestern Teamsters Security Fund (Fund), which paid out disability payments defined as wages for unemployment tax purposes, is subject to having its experience rating charged for employment security benefits paid to an "employee."

Some statutory background is necessary to bring this issue into sharper focus. The Employment Security Act (A.R.S. Title 23, Chapter 4) was enacted for the avowed purpose of lessening the burdens of involuntary unemployment and encouraging employers to provide more stable employment. A.R.S. § 23–601; *Employment Security Comm'n v. Valley Nat'l Bank,* 20 Ariz. App. 460, 513 P.2d 1343 (1973). Pursuant to these statutes, an employee who becomes unemployed under certain conditions is entitled to unemployment benefits for a stated period of time. *See* A.R.S. § 23–771 to –791; *Valley Nat'l Bank,* 20 Ariz.App. at 462, 513 P.2d at 1345. The amount of benefits payable is computed as a percentage of the employee's total wages from all employers paid during the quarter of the previous twelve months in which such total wages were the highest. A.R.S. § 23–779(A). This period is termed the employee's "base period." A.R.S. § 23–605.

These payments are funded, in part, from contributions made by various employers throughout the state. The Department of Economic Security (DES) maintains a separate account for each employer reflecting all contributions made. A.R.S. §§ 23–726, –727(A). These accounts are charged for benefits paid to former employees of that employer, unless there is a statutorily defined reason to exempt the account from being charged. A.R.S. § 23–727. If an employer's account is non-charged pursuant to § 23–727, the benefits are charged to the State Compensation Fund.

Although there is a standard rate for employer contributions, this rate is adjusted upwards or downwards depending on the ratio of contributions made as compared to benefits charged against each employer. A.R.S. §§ 23–730, –731. This ratio is known as the employer's experience rating. As a result, an employer will generally have to contribute more to the unemployment system if an employee's unemployment benefits are charged to that employer's account. This appeal concerns the applicability of the statute exempting an employer's account from being charged for a former employee's unemployment experience. A.R.S. § 23–727.

We now turn to the facts of this case, which are not in dispute. The Fund is a Taft–Hartley, ERISA-governed benefit fund consisting of contributions by a number of unrelated employers under collective bargaining agreements negotiated with the Teamsters Union. From these employer contributions, the Fund provides non-work related medical, hospitalization and disability benefits to eligible employees. Though such benefits might not be "wages" in ordinary parlance, effective January 1, 1985, Congress amended the Internal Revenue Code to redefine the term "wages" to include these short-term disability payments and subject them to federal unemployment tax (FUTA). 26 U.S.C. § 3306. Congress also amended the Code to provide that a third-party payor, such as the Fund, will be treated as an employer with respect to these wages. *Id.* Since the Arizona Unemployment Compensation scheme takes its basic direction from federal law, the applicable Arizona statutes were also amended in 1985 to redefine wages to include short-term sickness and disability payments. A.R.S. §§ 23–622, –645. The Arizona statutory scheme was not similarly amended to provide that a third-party payor should be treated as an employer with respect to these newly-defined wages.

As an "employer" under these circumstances, the third-party payor is subject to both federal tax and state contribution liability. 26 U.S.C. § 3301, et seq.; A.R.S. § 23–726. However, the Internal Revenue Service (IRS) issued interim guidelines in Announcement 85–75 which exempted from treatment as an employer a third-party payor who notifies the actual employer of

the amount of sickness or disability "wages" paid. IRS News Release IR–85–41 (April 24, 1985). After such a notification, liability for federal tax and, presumably, for the state contribution would be shifted from the third-party payor to the actual employer. Of course, this provision has no relevance to a single employer which provides sickness or disability benefits itself.

The Fund notes that this type of procedure is helpful to a third-party payor which serves a single employer, but that it is administratively difficult to implement for a multi-employer welfare plan, such as the Fund, because of the problems involved with identifying employees who may have worked for a number of different employers. Therefore, as part of its perceived fiduciary obligation to select the option least costly and burdensome to the plan, the Fund chose to pay the federal and state contribution tax on its sickness or disability payments, rather than shift it to the actual employer under the IRS guidelines.

The claimant, James R. Manley, was laid off by Ray Lumber Company on March 4, 1986. While Manley was still working at Ray Lumber, the Fund had paid him $300 in disability payments for a period of time when he was unable to work. On or about March 12, 1986, Manley filed an application for Unemployment Insurance Benefits with the DES. In processing this claim, the DES calculated the "wages" earned by Manley in the relevant base period in order to compute the appropriate amount of unemployment benefits payable. Properly included in these "wages" were the $300 in disability payments made to Manley from the Fund.

Subsequently, the DES notified the Fund of Manley's claim and identified the Fund as a base period employer. Recognizing that this notice was the first step towards charging the Fund account because of Manley's unemployment experience, the Fund filed a letter of protest with DES which, among other things, challenged the chargeability of Manley's unemployment experience to the Fund, since the Fund had

nothing to do with Manley's employment or unemployment.

On March 27, 1986, the DES determined that the "law provides for relief of charges to an employer's account based on the reason for separation from employment. Since the claimant was not employed by you, your account cannot be overcharged." The Fund appealed this determination, and the matter was eventually submitted to the DES Appeals Board.

The Appeals Board issued its decision on October 1, 1986, affirming the DES determination of chargeability on the grounds that the Fund was an "employer" for purposes of contribution liability, but not for purposes of determining chargeability. The Fund filed a request for review of this decision, and on March 19, 1987, the Appeals Board issued its decision affirming its earlier position on review. We granted the Fund's application for review pursuant to A.R.S. § 41–1993.

As noted previously, we are concerned with the applicability of the non-chargeability statute, A.R.S. § 23–727, to the situation presented here. This section provides in relevant part that:

> Benefits paid to an individual whose separation from work with any employer occurs under conditions found by the commission to be ... for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits, shall not be used in determining the future contribution rate of the employer from whose employment the individual so separated....

A.R.S. § 23–727(D). DES contends that the statute's plain language makes it inapplicable to this situation. The Fund responds that the expanded definition of "wages" changes the commonly-accepted definitions of various terms thus making this statute applicable. Further, the Fund asserts that such an application is fully consistent with legislative intent and policy.

Arizona Revised Statutes § 1–213, provides that "[w]ords and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have

acquired a particular and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." *See also, State v. Wise,* 137 Ariz. 468, 671 P.2d 909 (1983); *Western Coach Corp. v. Malibu Corp.,* 22 Ariz.App. 482, 528 P.2d 868 (1974). Similarly, A.R.S. § 23–602 provides that the "definitions of words and phrases set forth in this article shall apply throughout this [Employment Security] chapter *unless the context otherwise requires.*" (Emphasis added.) *See also, Gaskin v. Wayland,* 61 Ariz. 291, 148 P.2d 590 (1944).

In words of common meaning, Manley was not "working" for the Fund and therefore could not have experienced "separation from work" from the Fund as required by § 23–727. However, in the context of this statute, "work" must be regarded as a technical word of peculiar meaning. The short-term disability payments made by the Fund to Manley were defined as "wages" for employment tax purposes. A.R.S. § 23–622. In addition, DES concedes that the Fund is an "employer" under state law in this context. With the Fund defined as an "employer" paying "wages" to Manley for employment tax purposes, we are compelled to consider Manley as an "employee" for this limited purpose. Continuing the logic of these terms, Manley and the Fund had an "employment relationship" or "work relationship," while these "wages" were being paid. Once the Fund's "wage" payments to Manley were terminated, the "work relationship" came to an end. Thus, because of the unique definition of "wages" in the context of employment benefits law, the cessation of short-term disability payments can be considered a "separation from work" under § 23–727.

Having established a "separation from work," we turn next to the question of whether such a separation was for "compelling personal reasons not attributable to the employer." A.R.S. § 23–727(D). Stripped of its employment benefits law cloaking, Manley ceased to collect benefits from the Fund when he was no longer eligible for medical benefits, i.e., when he recovered from whatever illness or disability he had. This separation cannot be even remotely attributable to the Fund. Further, in this unique situation, recovery from an illness or disability was certainly a "compelling personal reason" to separate from an "employer." *See generally, Valley Nat'l Bank,* 20 Ariz.App. at 462–63, 513 P.2d at 1345–46. We therefore conclude that A.R.S. § 23–727(D) is applicable and that the Fund's account should not be charged for Manley's unemployment experience.

This construction, though semantically uncomfortable, is necessitated by these unusual statutory definitions and fully comports with the statute's policy and purpose. The cardinal rule of statutory construction is to ascertain the meaning of the statute and intent of the legislature. *City of Phoenix v. Superior Court,* 139 Ariz. 175, 677 P.2d 1283 (1984). Statutes are not to be interpreted woodenly and without regard to their aim. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983). *See also, Hyland v. City of Mesa,* 112 Ariz. 66, 537 P.2d 936 (1975).

Here, the purpose and policy underlying § 23–727(D) is clear:

> The legislature realized ... that unemployment may occur under circumstances which would have no bearing on the policy of encouraging stable employment, and for that reason the employer's experience rating for determining future contributions of the employer should not be charged for benefits paid such separated employee.

*Valley Nat'l Bank,* 20 Ariz.App. at 462, 513 P.2d at 1345. In short, the purpose of this statute is to prevent an employer's experience rating from being charged when the employer was not responsible for the individual's unemployment. This is precisely the situation presented here. Increasing the Fund's contribution rate will not promote stable employment by discouraging arbitrary employee terminations. It is uncontroverted that the Fund had no control over Manley's employment or unemployment. Surely, the Fund's activities can "have no bearing on the policy of encouraging stable employment." Accordingly, our construction of this statute is in

complete accord with its unambiguous purpose. DES's construction, on the other hand, would increase the Fund's contribution rate even if the benefit recipient's actual employer was exempted from having its account charged under § 23–727. Such a construction must be rejected because it would, in effect, punish the Fund for circumstances beyond its control, despite a legislative intent to the contrary.

We also disagree with the Appeals Board's conclusion that the Fund could be an employer for contribution liability purposes, but not for the purpose of determining chargeability. The non-chargeability statute represents a specific legislative decision to exempt employers subject to contribution liability from having their account charged under certain circumstances. The liability and exemption provisions are intractably intertwined, and we see no reason to subject an "employer" to contribution liability while denying it a legislatively mandated exemption from contribution rate increases, if applicable.

We recognize that this holding may benefit employers who choose to utilize third-party payors for medical and disability benefits. If a third-party payor does not shift FUTA tax liability to the actual employer pursuant to IRS guidelines, the contribution rate for the employer/third-party payor aggregate will not increase as much as a similarly situated employer which pays benefits itself due to our conclusion that the third-party payments will be exempted from being charged to the third-party payor's FUTA account.

Unfortunately, we are faced here with the task of fitting a square peg into one of two round holes. The final configuration is bound to be imperfect. The defining of medical payments as wages simply does not smoothly mesh with the pre-existing statutory framework.

As a general rule where the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, excepting as a different purpose is clearly shown.

*United States v. Arizona,* 295 U.S. 174, 191, 55 S.Ct. 666, 672, 79 L.Ed. 1371, 1381 (1935), *quoting, United States v. Jefferson Electric Co.,* 291 U.S. 386, 396, 54 S.Ct. 443, 447, 78 L.Ed. 859, 868 (1934).

The choice presented here is between a statutory construction that would charge the Fund's account every time benefits are paid regardless of the reason for the unemployment and a construction that would result in no charges to the account because of these payments. Neither choice is wholly satisfactory. However, as discussed previously, we conclude that a consistent reading of the relevant statutory terms and the policy underlying the non-chargeability statute supports the latter construction.

For the foregoing reasons, the decision of the Unemployment Insurance Appeals Board is reversed, and the matter is remanded for entry of an order consistent with this opinion.

FIDEL and HAIRE, JJ., concur.