IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

PEDRO RIVERA BARRIGA, *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,

and

PRECISION AUTO BODY, LLC, *Appellees*.

No. 1 CA-UB 21-0107
FILED 9-6-2022

Appeal from the A.D.E.S. Appeals Board
No.  U-1696238-001-B

**VACATED AND REMANDED**

COUNSEL

Christian Dichter & Sluga PC, Phoenix
By Katharine Myers
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee, ADES*

---

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        To receive unemployment benefits from the Arizona Department of Economic Security ("ADES"), an employee who voluntarily leaves employment must generally do so with good cause, A.R.S. § 23-775(A)(1).  This case requires us to interpret Arizona Administrative Code ("A.A.C.") R6-3-50515(C), which governs whether an employee has good cause to quit because of "an intolerable work situation" due to "inharmonious relations with a fellow employee."

¶2        R6-3-50515(C)(2) lists two "factors [that] should be considered" by ADES "[i]n determining whether a situation is intolerable," but we hold that other relevant factors may and should be considered in determining whether intolerable work conditions existed.  To the extent our holding conflicts with statements in *Murray v. Arizona Department of Economic Security*, 173 Ariz. 521, 523–24 (App. 1992), we disagree with those statements.  Because the ADES Appeals Board ("Board") limited its analysis to the two factors listed in the rule, we vacate the Board's decision and remand for consideration of all relevant factors that may have made the work environment intolerable for appellant Pedro Rivera Barriga.  Depending upon the outcome of that analysis, the Board may also need to consider whether Barriga quit for compelling personal reasons due to a health or physical condition.

## BACKGROUND

¶3        Neither party disagrees with the relevant factual findings made by the administrative law judge ("ALJ") after an evidentiary hearing.  Those findings were accepted by the Board and are summarized below.

¶4        Barriga worked for appellee Precision Auto Body, LLC ("Precision") as a detailer for several months before he quit in May 2020.  Barriga felt discriminated against because his supervisor "failed to hear him out" on his access to an evaporative cooler "that he claimed was necessary to control his heat exposure in the shop, which became extremely warm."

The supervisor had placed the cooler in a centralized position so it would cool Barriga's work area as well as a coworker's work area. But the coworker "goaded" Barriga by placing the cooler closer to the coworker's work area. The coworker could control where the cooler was placed each morning because he started work earlier than Barriga. When the coworker would take a break, Barriga would reclaim the cooler. The exercise of moving it around the shop between the two men would continue all day. According to Barriga, he needed the cooler facing him because he had a medical condition that required he not become dehydrated or overheated, but he did not disclose his medical condition to the supervisor.

¶5 The supervisor "viewed the tug-of-war between [Barriga] and the other employee as a game they were playing." After discussing the matter a number of times with the supervisor, Barriga again expressed his frustration and concern about the situation. He told his supervisor he was being ignored and "that the supervisor was siding with the other, more senior and more skilled employee who was manipulating the situation." Barriga ultimately quit and filed for unemployment benefits.

¶6 An ADES deputy found that Barriga was disqualified from benefits because he voluntarily left his employment without good cause and did not show that he was subject to intolerable working conditions. *See* A.R.S. § 23-773(A), (B) (providing that a deputy must review applications for benefits and determine whether a claim is valid and promptly notify the claimant). Barriga appealed to the appeals tribunal and the ALJ heard testimony from Precision's witnesses and Barriga. *See* A.A.C. R6-3-1503 (claimants may appeal a deputy's determination to the appeals tribunal).

¶7 After making factual findings, the ALJ quoted portions of A.A.C. R6-3-50515(C), including the following:

> 1. A worker who leaves because of inharmonious relations with a fellow employee leaves with good cause if he is established that the conditions were so unpleasant that remaining at work would create an intolerable work situation for him.
>
> 2. In determining whether a situation is intolerable, the following factors should be considered:
>
>> a. Would continued employment create a severe nervous strain or result in a physical altercation with the other employee?

> b. Was the worker subjected to extreme verbal abuse
> or profanity? The importance of profane language as
> an adverse working condition varies in different types
> of work.

The ALJ also cited A.A.C. R6-3-50210, which states that a "reasonable worker will not quit impulsively," and "good cause is generally not established unless the worker . . . [a]ttempts to adjust unsatisfactory working conditions."

**¶8** The ALJ determined that Barriga's relationship with his supervisor was inharmonious and created an intolerable working relationship. The ALJ reasoned that Barriga tried to "work out his frustrations with [Precision], but he was not seeing a positive result and had grave doubts about matters improving." The ALJ determined that the lack of an effective response from the supervisor, who thought it was merely a game between the employees, created an intolerable working environment for Barriga, who had made numerous attempts to address the problem. Thus, the ALJ concluded that Barriga quit with good cause under R6-3-50515(C)(1) (inharmonious relations with an employee creates an intolerable work situation) and was eligible for benefits.

**¶9** Precision appealed the ALJ's decision to the Board. *See* A.A.C. R6-3-1504. The Board disagreed with the ALJ's application of the law to the facts and reversed the decision. The Board acknowledged the conflict between Barriga and his coworker, as well as Barriga's dissatisfaction with how the supervisor handled the situation, but found these concerns were merely Barriga's perception of being ignored. Noting that conflict is the norm in any environment, the Board emphasized Barriga's failure to establish "by any objective standard that remaining at work would cause him severe nervous strain or would result in an altercation, nor was there any evidence of extreme verbal abuse or profanity." *See* A.A.C. R6-3-50515(C)(2). The Board concluded that Barriga did not establish he was subject to intolerable working conditions and thus he failed to meet his burden to show he quit with good cause.

**¶10** Barriga applied for judicial review to this court under A.R.S. § 41-1993. We granted the application, appointed pro bono counsel, and requested briefing on whether (1) a claimant must prove at least one of the two factors listed in R6-3-50515(C)(2); and, (2) if the rule contemplates that additional factors should be considered, whether Barriga was subject to an intolerable work situation.

**DISCUSSION**

**¶11**         We review de novo whether the Board properly interpreted the law. *Figueroa v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 548, 550, ¶ 9 (App. 2011). In construing agency rules, we apply the same rules of construction we apply to statutes, *Stapert v. Ariz. Bd. of Psych. Exam'rs*, 210 Ariz. 177, 179, ¶ 7 (App. 2005), meaning we "effectuate the text if it is clear and unambiguous," *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018). When construing a rule, we consider its context and related provisions that address the same subject. *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019). If a rule is unambiguous, we apply the text as written without employing other methods of statutory interpretation. *See State v. Jurden*, 239 Ariz. 526, 530, ¶ 15 (2016).

**A.         Intolerable Work Situation**

**¶12**         Barriga argues he left with good cause under R6-3-50515(C) and there was sufficient evidence that he was subject to an intolerable work situation. *See also* A.A.C. R6-3-50515(F) (applying same "fellow employee" standard to each "supervisor"). ADES counters in part that Barriga's claim that he felt discriminated against must fail because he did not try to resolve his grievance before leaving. *See* A.A.C. R6-3-50515(A)(4) (requiring an employee to address his grievance before quitting unless the attempt would not be feasible). But the ALJ found that Barriga had a "number of discussions" with the supervisor about his frustrations with the coworker before Barriga quit, and the Board adopted that finding.

**¶13**         Barriga argues the provisions outlined in R6-3-50515(C)(2) are merely factors for the court to consider and urges us to decline to follow *Murray.* In reaching its decision, the Board accepted the ALJ's factual findings and then explained that R6-3-50515(C)(2) outlines two factors to consider in determining whether a work situation is intolerable: (1) whether continued employment would "create a severe nervous strain or result in a physical altercation," and (2) whether the employee was subject "to extreme verbal abuse or profanity." The Board concluded that Barriga did not establish he was subject to an intolerable work situation under either factor, and thus did not meet his burden to show he quit with good cause. In doing so, the Board misinterpreted the applicable rule.

**¶14**         In *Murray*, this court applied R6-3-50515(C) to determine whether the employee in that case established intolerable working conditions under section (C)(2). 173 Ariz. at 523–24. As *Murray* explained,

[t]he relevant portion of [A.A.C. R6-3-50515(C)] *requires an employee who leaves due to a disagreeable relationship with another employee to establish that the conditions were so unpleasant that continued employment would create a severe nervous strain or a physical altercation, or subject the employee to extreme verbal abuse, profanity or physical attack*. . . . Without specific evidence that continued employment created a severe nervous strain or that he was subjected to verbal abuse, profanity or physical attacks, *see* A.A.C. R6-3-50515(C)(1), (2), the record supports the board's conclusion that Murray failed to establish good cause for his voluntary separation.

*Id*. (emphasis added). To the extent *Murray* construed R6-3-50515(C) as being limited to the two listed factors, we disagree with that construction.

**¶15**       In the unemployment benefits context, every separation from employment is either a quit or a discharge. A.A.C. R6-3-50135(A)(1). If an employee quits for good cause, the employee is entitled to unemployment benefits. A.R.S. § 23-775(1); *Ferguson v. Ariz. Dep't of Econ. Sec.*, 122 Ariz. 290, 292 (App. 1979) (to be entitled to unemployment benefits, an employee must show good cause for voluntarily leaving). ADES has adopted a "reasonable person" test to determine whether an employee has good cause for quitting. A.A.C. R6-3-50210(A). With regard to quitting due to working conditions, ADES has promulgated rules describing unreasonable working conditions in general and for various situations, including inharmonious relations with fellow employees. A.A.C. R6-3-50515.

**¶16**       We do not read R6-3-50515(C) so narrowly as to say that only the two factors listed, (1) severe nervous strain or potential fisticuffs, and (2) extreme verbal abuse or profanity, are the only conditions that could ever make a work situation intolerable. When read as a whole, R6-3-50515(C) requires an employee to show that an inharmonious relationship created an intolerable work situation. That is the standard, and the context of related provisions supports our conclusion. For example, "working conditions" is described, for purposes of R6-3-50515, as "environmental conditions such as light, sanitation, fellow-employees, etc." A.A.C. R6-3-50515(A)(1). If an employee faced a "sanitation" issue that substantially affected his or her ability to work, it would be unreasonable to find that the employee could not quit for good cause unless the situation fits neatly within the confines of the two factors listed in R6-3-50515(C)(2). *See* A.A.C. R6-3-50515(A)(1), (2) (explaining that a worker who leaves due to working conditions must show the conditions "are substantially below those prevailing in the area for similar work").

¶17　　　　If R6-3-50515(C)(2) was intended to cover the entire universe of circumstances that could constitute an intolerable work situation, then ADES would have made it plain that no other factors are relevant. Instead, the only reasonable construction of the rule is that the listed factors are not the only factors to be evaluated; they are examples of behavior that may lead to an intolerable work situation. Moreover, our analysis here aligns with the established principle that we construe unemployment benefits provisions "liberally to grant benefits and narrowly to deny benefits." *Munguia v. Dep't of Econ. Sec.*, 159 Ariz. 157, 162 (App. 1988). Our interpretation of R6-3-50515(C)(2) here, rather than that in *Murray*, achieves that goal.

¶18　　　　ADES contends it "never acted as though *Murray* was controlling." Although the Board did not cite *Murray* in its decision, it stated:

> When determining what circumstances constitute an intolerable work situation, the rules state that factors to consider are whether the situation would cause severe nervous strain or a physical altercation, or whether the use of extreme verbal abuse or profanity was involved. . . . [Barriga] did not establish by any objective standard that remaining at work would cause him severe nervous strain or would result in an altercation nor was there any evidence of extreme verbal abuse or profanity.

This is the *Murray* formulation of the rule, restricting an intolerable work situation to only the two factors listed in subsection (C)(2). Because the Board applied an erroneous interpretation of the rule to Barriga's case, we vacate its decision.

¶19　　　　ADES also argues that regardless of whether the Board should have considered other factors, Barriga did not meet his burden to show an intolerable work situation existed. Because resolution of that issue requires additional factual findings, it is the Board's task to resolve it on remand. *See Avila v. Ariz. Dep't of Econ. Sec.*, 160 Ariz. 246, 250 (App. 1989).

### B.　　Jurisdiction To Consider Medical Evidence

¶20　　　　Barriga argues that even if he did not establish that he quit with good cause under R6-3-50515(C), he is still eligible for benefits under A.A.C. R6-3-50235(B)(3). An employee is eligible for benefits when he quits "for compelling personal reasons not attributable to the employer if . . . [t]he work aggravates a health or physical condition which existed prior to the

[employee's] acceptance of the job." A.A.C. R6-3-50235(B)(3)(a). The employee must substantiate his health or physical condition. A.A.C. R6-3-50235(A)(2).

**¶21** ADES argues we lack jurisdiction to consider whether Barriga was entitled to benefits under R6-3-50235(B) because neither party raised the issue in a petition to review to the Board and neither the ALJ nor the Board considered it. *See* A.R.S. § 41-1993(B) ("An issue may not be raised on appeal that has not been raised in the petition for review before the appeals board."). That provision does not apply here given that Precision, not Barriga, filed the petition for review to the Board. It would be unreasonable to construe § 41-1993(B) as precluding a litigant (including ADES) who prevails at the appeals tribunal level from raising an issue on appeal to this court that was fairly presented to the ALJ.

**¶22** Barriga testified that he needed the cooler because he had a medical condition and could become dehydrated if he was not in a cool environment. Before the hearing, Barriga faxed a letter from his doctor to the ALJ, confirming his medical condition and stating that Barriga should not become dehydrated. But neither the ALJ nor the Board considered Barriga's proof of a medical condition to determine whether he quit for a compelling personal reason as defined in R6-3-50235(B)(1). On remand, the Board should consider all relevant evidence, including Barriga's medical condition.

### C. Compelling Personal Reasons

**¶23** ADES argues that even if we conclude Barriga quit for compelling personal reasons under R6-3-50235(B), such a finding would not establish that Barriga is entitled to benefits because he did not quit with good cause. An employee who quits due to a health or physical condition may be eligible for benefits if he did so with good cause or for compelling personal reasons. *See* A.A.C. R6-3-50235(B); *see also Munguia*, 159 Ariz. at 163 ("If a claimant is found to have voluntarily left employment without good cause, the burden is on the claimant to show *an excusable compelling reason* or good cause for leaving." (emphasis added)). Under the plain language of R6-3-50235(B), an employee need not show good cause *and* compelling personal reasons for leaving to be eligible for benefits. If, on remand, the Board finds that Barriga quit because of a health or physical condition and had a compelling personal reason to do so, then Barriga is eligible for benefits.

¶24 ADES contends that whether an employee quits for compelling personal reasons only relates to whether ADES will charge an employer's experience rating, and not whether the employee is eligible for benefits. When ADES pays unemployment benefits to a claimant, ADES "maintains a separate account for each employer reflecting all contributions made" toward unemployment benefit payments. *Sw. Teamsters Sec. Fund v. Ariz. Dep't of Econ. Sec.*, 157 Ariz. 358, 359 (App. 1988); *see also* A.R.S. § 23-727(A). To determine an employer's contribution rate, each employer is classified "in accordance with their actual experience in the payment of contributions and with respect to benefits charged against their accounts." A.R.S. § 23-731. An employer's account is "charged for benefits paid to former employees . . . unless there is a statutorily defined reason to exempt the account from being charged." *Sw. Teamsters Sec. Fund*, 157 Ariz. at 359; *see also* A.R.S. § 23-727(C). Section 23-727(D) provides one such exception: "[b]enefits paid to an individual whose separation from work with any employer . . . for *compelling personal reasons* not attributable to the employer and not warranting disqualification for benefits shall not be used as a factor in determining the future contribution rate of the employer." (Emphasis added.)

¶25 ADES correctly notes that if the Board finds that Barriga quit for compelling personal reasons under A.A.C. R6-3-50235(B), ADES will not charge Precision's account or experience rating. This does not, however, preclude a claimant, such as Barriga, from obtaining benefits if the claimant meets his burden to show he had compelling personal reasons to quit due to a health or physical condition.

## CONCLUSION

¶26 Because the Board applied an erroneous interpretation of the law to Barriga's case, we vacate the Board's decision and remand for reconsideration consistent with this opinion. In its discretion, the Board may remand to the appeals tribunal for additional fact finding.

